IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SEAN B.,[1] | No. 6:19-cv-1804-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Sean B.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On November 29, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and on December 8, 2016 applied for Supplemental Security Income ("SSI") under Title XVI, with an alleged onset date of August 19, 2016. Tr. 14. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 96, 108, 126, 140. Plaintiff appeared and testified at a hearing held on August 3, 2018, before Administrative Law Judge (ALJ) B. Hobbs. Tr. 58-84. On November 2, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 11-29. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 19, 2016, the alleged onset date. Tr. 16. At step two, the ALJ determined that Plaintiff had the following severe impairments: anxiety and depression. Tr. 16-17. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: he requires a workstation requiring no more than 5 minutes of travel time to a bathroom. The claimant can have no exposure to workplace hazards such as unprotected heights or dangerous machinery. The claimant can tolerate no more than occasional contact with the public and can tolerate frequent interactive contact with coworkers and supervisors. Due to the side effects of medications and mental impairments the claimant can understand, remember and carry out only simple and short instructions and can make only simple, work-related judgments and decisions.

Tr. 18.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as small products assembler, collator operator, and photocopy machine operator. Tr. 23. The ALJ therefore found Plaintiff not disabled. Tr. 24.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. He argues the ALJ erred by (1) erroneously discounting Plaintiff's symptom testimony, (2) improperly rejecting the opinions of two different examining psychologists, and the reviewing opinions of two different reviewing psychologists, and (3) failing to meet his burden at step five. I address these issues in turn.

**I.    Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds).

First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that he stopped working in August 2016 because of anxiety. Tr. 68. He stated the anxiety became so bad it caused rapid heart rate and he had two episodes of syncope (*i.e.* fainting or passing out) at work. Tr. 68. When asked what was causing the anxiety he stated, "PTSD and from childhood and adult traumas and two work place bullies." Tr. 68.

Plaintiff also testified that he had been getting mental health treatment but that changed in the last 60 to 90 days because "there are only two places in town that accept the insurance and I had a very short falling out at the last one and they wouldn't return my calls when I had a bad reaction to medication. Three messages over the course of a week and they were just ignored …

4 – OPINION & ORDER

so I was going to go to the county mental health, but then the medical [physical] health took precedent and I've been having to focus on that for the last 90 days." Tr. 69. When asked what the physical issues he was focusing on were, he replied that he had gastroesophageal reflux disease (GERD) issues and had to go through all the tests for it to get insurance to approve the GERD medication. Tr. 69. The medication helped with the GERD but it caused other problems with getting food to go down and losing weight. Tr. 69. Plaintiff also testified that he mostly stays busy with video games or tv to keep him from thoughts of self-harm. Tr. 72-73. He stated he goes grocery shopping, but it is difficult, and when asked why he said it is "because there are people." Tr. 73. When asked what problems he has around people he stated "anxiety, panic attacks." Tr. 73.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 19. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, that Plaintiff failed to follow through with recommended medical treatment, and that Plaintiff's record of conservative treatment conflicted with his symptom allegations. Tr. 19.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the

claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on conflicting medical records to discount certain discrete portions of Plaintiff's subjective symptom testimony about the extent of hallucinations and mood-related symptoms from his anxiety and PTSD. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff stated he stopped working because his anxiety and depression caused rapid heart rate and two episodes of syncope at work. Tr. 68. He elaborated that he has difficulty doing things like grocery shopping "because there are people," which causes him anxiety and panic attacks. Tr. 73. Plaintiff shared that his only hobby is videogames, which he plays alone. Tr. 73. The ALJ contrasted this testimony with medical records from a March, 2017 mental health appointment when Plaintiff shared he plays videogames online, which helped him be more "social." Tr. 20 (citing Tr. 490). It was reasonable for the ALJ to infer from this contradiction that Plaintiff's testimony about his anxiety and difficulty interacting with others was overstated. Tr. 20. This basis to discount a narrow aspect of Plaintiff's symptom testimony was clear, convincing, and supported by substantial evidence in the record.

*B. Conservative Treatment & Failure to Follow Treatment*

The ALJ also found Plaintiff's symptom testimony was inconsistent with a history of conservative treatment, and his failure to follow treatment recommendations. Tr. 19. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity. 20 C.F.R. §§ 404.1530, 416.930. Likewise, an ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996).

  *i.*  *Conservative Treatment*

The ALJ erred by rejecting Plaintiff's symptom testimony because his treatment for those symptoms was "conservative." The ALJ summarized Plaintiff's therapy, medication management, and outpatient treatment and concluded it was "sporadic, conservative treatment" presumably because he had no inpatient treatment for PTSD or anxiety. Tr. 19. The ALJ's characterization of Plaintiff's mental health treatment as "conservative" is wrong. Many district courts within the Ninth Circuit have held that the prescription of psychotropic medications is not

"conservative treatment" as used in the social security context. *See, e.g., Sandberg v. Comm'r Soc. Sec. Admin.*, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative in the same manner as over-the-counter pain relievers."); *Gia M. P. v. Comm'r Soc. Sec. Admin.*, 2018 WL 403 WL 4031606, at *6 (D. Or. Aug. 23, 2018) (holding prescription medications and therapy were not "conservative treatment").

And the lack of inpatient hospitalization is not evidence of conservative treatment in the context of complex mental health disorders either. *See, e.g., Choat v. Berryhill*, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (so stating and collecting cases); *Tammy O. v. Comm'r Soc. Sec. Admin.*, Case No. 3:17-cv-774-SI, 2018 WL 3090196, at *8 (D. Or. June 20, 2018) (finding lack of inpatient hospitalizations did not contradict claimant's testimony about severity of mental health symptoms). Given this well-developed body of law, the ALJ's conclusion that Plaintiff's subjective symptom testimony is undermined by a history of conservative treatment is not supported by substantial evidence. The ALJ did not harmfully err, however, because he identified several other sufficient bases to discount Plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

  ii. *Failure to Follow Treatment Advice*

The ALJ here reasonably concluded that Plaintiff's symptom testimony was not as severe as alleged because he failed to follow treatment recommendations from his doctors. As noted above, An ALJ may rely on a claimant's failure to follow a prescribed course of treatment to discount testimony about the intensity or persistence of symptoms. *Tommasetti*, 533 F.3d at 1039. For example, the ALJ cited Plaintiff's initial failure to take prescribed anxiety medications

because, in Plaintiff's opinion, "he did not feel that [they] were helpful and they kept him awake." Tr. 19 (citing Tr. 351). The ALJ also noted that while Plaintiff attended therapy sessions throughout 2017, he had stopped by May, 2018. Tr. 19, 21. The ALJ relied on Dr. Scott Alvord's opinion that "with more appropriate treatment, [Plaintiff's] functioning would improve dramatically." Tr. 21, 703.[2] And finally, the ALJ cited the chart from an August, 2017 therapy appointment where Plaintiff noted that, while "anxiety is the cause of most of the inhibitions in his life," he is "not willing to do anything differently." Tr. 20 (citing Tr. 515). Ultimately, as Plaintiff acknowledges, psychotherapy treatment was effective. *See* Tr. 515. But Plaintiff stopped attending these appointments, and it was reasonable for the ALJ to discount his testimony from the August, 2018 hearing about the significance of his anxiety symptoms when he had stopped going to therapy for the past four months. In the absence of a good reason for failing to follow this treatment advice, substantial evidence supports the ALJ's conclusion that Plaintiff's failure to follow treatment recommendations undermined the extent of his symptom allegations. [3]

---

[2] Plaintiff's stated reason for failure to pursue mental health treatment is that, at the two places that accept his insurance, at one he had a "very short falling out," and "they wouldn't return [his] calls when [he] had a bad reaction to medication." Tr. 69. Concerning the other location, he stated that he chose not to pursue mental health treatment to focus on "medical health" instead. Tr. 69. These are not the types of explanations Courts in this District have come to accept when considering whether a Plaintiff reasonably failed to follow a prescribed course of treatment. *See, e.g., Jill C. v. Berryhill*, Case No. 3:17-cv-1892-SI, 2018 WL 6308728, at *4 (D. Or. Dec. 3, 2018) (noting acceptable excuses for non-compliance, such as an inability to pay).

[3] Defendant also tries to bolster the ALJ's conclusion with additional evidence the ALJ did not cite. Def. Br., ECF No 17 at 7. Even if this were compelling support, the Court considers only those reasons relied upon by the ALJ, not Defendant's *post hoc* rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because the "additional evidence" Defendant cites was not part of the ALJ's analysis, the Court will not consider whether it would be a sufficiently clear and convincing reason to discount Plaintiff's symptom testimony.

9 – OPINION & ORDER

## II.     Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject an examining doctor's opinion, the ALJ must present "specific, legitimate reasons." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040.

An ALJ can reject a treating physician's opinion if it is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal citations omitted). When a doctor supports a medical opinion with his or her own assessment or observations, however, this basis is insufficient. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) Therefore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

*A. Dr. David Archambault, Ph.D. & Dr. Scott Alvord*

On June 27, 2018, Plaintiff was examined by Dr. David Archambault, Ph.D. Dr. Archambault's psychological evaluation was based on a clinical interview, a review of the Plaintiff's mental health progress notes, and a mental status examination which included testing. Tr. 693-698. Dr. Archambault observed that Plaintiff was somewhat disheveled and had facial expressions that were flat or neutral with minimal eye contact. Tr. 697. His mood/affect was depressed and sad. Tr. 657. Dr. Archambault diagnosed PTSD and Major Depressive Disorder, recurrent, severe. Tr. 698.

Dr. Archambault concluded Plaintiff would have difficulty interacting with coworkers. Tr. 699. Dr. Archambault also opined that Plaintiff's ability to do work related activities on a sustained basis of 8 hours a day for 5 days a week would be seriously limited with a substantial loss in the ability to function effectively with marked limitations in: interacting appropriately with coworkers; interacting appropriately with supervisors; and interacting appropriately with the public. Tr. 690-91.

On May 30, 2018, Plaintiff was examined by Dr. Scott T. Alvord, Ph.D. Tr. 700. Dr. Alvord's psychological evaluation was based on a clinical interview, a mental status examination, and a review of the Plaintiff's records. Tr. 700. Dr. Alvord observed that Plaintiff was initially agitated, which diminished, but that he remained anxious. Tr. 700. Dr. Alvord observed that Plaintiff's mood was nervous and his affect was downtrodden and anxious. Tr. 702. Dr. Alvord also found that Plaintiff's psychiatric symptoms "ha[ve] clearly had an impact on his occupational success." Tr. 703. Dr. Alvord diagnosed Plaintiff with chronic PTSD and Depressive Disorder. Tr. 704.

11 – OPINION & ORDER

Dr. Alvord opined that Plaintiff would have: moderate difficulty performing work activities on a consistent basis without special or additional instructions/accommodations; have moderate difficulty maintaining regular attendance in the work place; moderate difficulty completing a normal workday/work week without interruptions from a psychiatric condition; moderate difficulty dealing with usual stress encountered in the work place; and mild to moderate difficulty interacting with coworkers and the public. Tr. 704.

The ALJ gave Dr. Archambault and Dr. Alvord's opinions only "partial weight" because they were based on one-time visits, and were "heavily dependent on the claimant's self-reported symptoms." Tr. 21. The ALJ did not specify which portions of the opinions deserved "partial weight," what remained after discounting them, or which parts of the opinions were overly dependent on Plaintiff's self-reports. Tr. 21.

The ALJ failed to support his decision to partially discount these opinions with substantial evidence. As noted above, an ALJ cannot discount a medical opinion because it relies on otherwise properly discounted self-reports if that medical opinion is equally well-supported by a doctor's own clinical observations. *Ghanim,* 763 F.3d at 1162; *Tommasetti*, 533 F.3d at 1041. In addition to relying on Plaintiff's say-so, both doctors performed a detailed mental status examination, charting a number of results. Tr. 696-98 (Archambault), Tr. 700-04 (Alvord). Both doctors listed several clinical observations regarding plaintiff's symptoms, appearance, speech, attitude, mood, memory and affect. Tr. 697, 702-03. Beyond a detailed exam including several objective tests of memory and comprehension, both also analyzed Plaintiff's prior mental health progress notes. Tr. 696-98, 700-04. Therefore, the record shows that Doctors Archambault and Alvord did not base their opinions on self-reported symptoms alone. Rather, they provided opinions based on medical records, observations, objective results of the mental status

examinations, *and* plaintiff's self-reported symptoms. Thus, the ALJ's finding that the doctors' assessments were unreliable because they were too reliant on Plaintiff's self-reported symptoms is not supported by substantial evidence.

Nor was the fact that Dr. Archambault and Dr. Alvord saw Plaintiff only once a sufficient reason to discount their opinions. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. When considering an examining physician's opinion, it is the quality, not just the quantity, of the examination that an ALJ must consider. *Id.* Discrediting an opinion because the examining doctor only saw claimant one time would effectively nullify most, if not all, examining doctor opinions. *See, e.g., Yeakey v. Colvin*, 2014 WL 3767410 at *6 (W.D. Wash. July 31, 2014). The ALJ did not question the doctors' methodologies, credentials, or otherwise note any deficient aspect of their examinations. *See* Tr. 21. A one-visit sample size may be a reason to discount an examining doctor's opinion relative to the opinion of a more longstanding treating doctor, but it is not a reason to discount the examining doctor's opinion on its own. Therefore, the ALJ erred by improperly rejecting doctors' Archambault and Alvord's opinions because they were based on a one-time examination.

*B. Winifred C. Ju, Ph.D., and Susan M. South, Psy.D.,*

In February and March, 2017, respectively, state agency psychological consultants Dr. Winifred C. Ju, and Dr. Susan M. South evaluated Plaintiff. They concluded that Plaintiff needed a work setting that did not require contact with the general public because of his depression and anxiety. Tr. 94, 106, 123, 137. They also found Plaintiff "would not do well" with "certain supervisory styles (ie [sic] antagonistic) or clashing personalities." Tr. 94, 106, 123, 137. The ALJ gave these opinions "partial weight" because they overstated Plaintiff's limitations in

interacting with others. Tr. 21. For non-examining medical sources, the quality of the explanation provided for the opinion depends on the supportability and quality of explanation. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). For evidence prepared by State agency medical and psychological consultants, ALJs must "consider" their opinions "and articulate how they considered them in the decision." SSR 17-2P at *3.

The ALJ sufficiently considered Doctors Ju and South's opinions, and provided adequate justification for his conclusion that they deserved only "partial weight." The ALJ addressed both opinions' recommendations that Plaintiff would struggle with certain supervisory styles, and should have only superficial contact with coworkers. Tr. 21, 137. The ALJ contrasted these opinions with Plaintiff's own testimony that he shopped in public, and attended church, community-sponsored support groups, medical appointments, and therapy sessions. Tr. 21. Moreover, doctors. Ju and South also opined that Plaintiff could interact appropriately with co-workers during brief, routine, and superficial encounters. Tr. 94, 106, 123, 137. They further found he could "maintain acceptable relationships" with supervisors. Tr. 94, 106, 123, 137. The ALJ satisfied his obligation to consider the evidence, and supported his decision to discount the non-examining medical opinions with substantial evidence. *See* SSR 17-2p at *3. The ALJ therefore properly gave only partial weight to these two opinions.

*C. Shay Stacer, Ph.D.*

On November 10, 2017, Plaintiff met with Shay Stacer, Ph.D. Tr. 735. Plaintiff's Primary Care Provider recommended evaluation for confirmation of PTSD. Tr. 735. Dr. Stacer spent 20 minutes with Plaintiff and noted he was dysphoric [profound state of unease] and had a restricted affect, and Dr. Stacer noted the plan was to reevaluate at a scheduled visit in the future. Tr. 735. On December 11, 2017, Dr. Stacer met again with Plaintiff and spent 30 minutes with him in

which she noted he was dysphoric and had social deficits. Tr. 732. Dr. Stacer found Plaintiff "does not meet [the Diagnostic and Statistical Manual of Mental Disorders] criteria for PTSD based on work-related stressors as those events were not prolonged or excessive and did not involve threat to life, or threat of injury." Tr. 732. Dr. Stacer diagnosed depression and anxiety instead, and also referred Plaintiff to another practitioner, Jennifer Rossi, Ph.D., "for a more comprehensive evaluation for PTSD with childhood events, if desired." Tr. 732, 733. There is no evidence, however, that Plaintiff saw Dr. Rossi after the December 2017 referral.

As the ALJ noted, Dr. Stacer did not offer a functional opinion and her treatment notes rejected the PTSD diagnosis. Tr. 22. Dr. Stacer noted that Plaintiff "was seeking evaluation for disability and was difficult to engage during the visit and offered only minimal elaboration." Tr. 22, 732. The ALJ credited Dr. Stacer's opinion as consistent with the observations of Plaintiff's previous therapist that his anxiety was situational regarding his work. Tr. 22 (citing Tr. 350). Plaintiff argues that the ALJ erred by failing to properly consider the factors laid out in 20 C.F.R. 404.1527(c).

The ALJ reasonably relied on Dr. Stacer's opinion, and adequately considered it consistent with the other available medical records. Regardless of its source, the ALJ is required to consider the weight afforded to every medical opinion in the record using certain factors, such as: the nature of the relationship, the supportability of the opinion in terms of all medical signs, laboratory findings, and explanation provided, and the consistency of the opinion with the medical record as a whole. 20 C.F.R. 404.1527(c). Here, the ALJ credited Dr. Stacer's opinion because of the strength of the treating relationship—she examined him in-person twice—and its consistency with other medical records. For example, the ALJ found Dr. Stacer's opinion matched that of Plaintiff's previous therapist (Tr. 350), and other treating providers who found

Plaintiff's anxiety disorder "seems to be fairly situational regarding his work" but "did not seem to think that switch[ing] vocations at this time is in his best interest." Tr. 304, 351; see also Tr. 89, 101 (analysis of State agency medical and psychological consultants). Both of these were reasonable bases to credit Dr. Stacer's opinion. 20 C.F.R. 404.1527(c). Plaintiff's argument that the ALJ failed to consider the 1527(c) factors are simply an effort to have this Court re-weigh the evidence, which it cannot do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). The Court therefore finds the ALJ did not err in crediting Dr. Stacer's medical opinion.

### VI. Remand[4]

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further JohnCoit proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. If all three requisites are met, the court may remand for

---

[4] Plaintiff also argues the ALJ erred by failing to include the Agency reviewing Doctor's opinion that Plaintiff "would not do well with certain supervisory styles" when providing hypotheticals to the VE. *See* Pl. Br., ECF No. 14 at 21. Because the Court is remanding this case for the ALJ to reconsider medical opinions, the ALJ may reformulate the RFC, and will need to conduct a new step five analysis. For that reason, Plaintiff's claim of error at step five is moot and need not be considered at this time.

benefits. *Id.* However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021.

Here, the first requisite is met because the ALJ erroneously rejected medical opinions. Further proceedings would be useful for the ALJ to properly consider the medical opinions of Doctors Archambault and Alvord. Therefore, this case is reversed and remanded for further proceedings so that the ALJ can, re-evaluate the opinions of Doctors Archambault and Alvord, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED: 11/9/2023            .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

17 – OPINION & ORDER